**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | **No. 1:15-cr-00238** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **MICHAEL ANTHONY RIDGEWAY** | : | |
| **Defendant** | : | |

## MEMORANDUM

Before the Court are Defendant Michael Ridgeway's motions to suppress.  (Doc. Nos. 25, 30.)  For the following reasons, the Court will deny Defendant's motion to suppress evidence under the Fourth Amendment to the United States Constitution (Doc. No. 25), and grant Defendant's supplemental motion to suppress statements pursuant to the Fifth and Sixth Amendments to the United States Constitution (Doc. No. 30).

## I.    BACKGROUND

On February 3, 2016, the Court conducted a suppression hearing on Defendant's Fourth, Fifth, and Sixth Amendments claims.  (Doc. Nos. 34, 39.)  Officer Chad McGowan and Sergeant Kyle Gautsch of the Harrisburg Police Department testified to the events surrounding Defendant's arrests on February 22, 2015 and June 30, 2015.  (Id.)  The parties introduced exhibits and, after the hearing, submitted supplemental briefs.  (Doc. Nos. 35, 36, 42, 49, 54.)

### A.    Factual Background

On February 22, 2015, Officer Chad McGowan of the Harrisburg Police Department was in full police uniform and working an on-duty, overtime detail at Edison Village, a multi-unit, residential property in Harrisburg, Pennsylvania. (Doc. No. 39, Tr. at 3: 21-22; 4: 22-24; 5: 2-4; 62: 5-6.)  Shortly before 1 a.m., Officer McGowan heard shouting coming from just outside the manager's office at the Edison Village housing complex.  (Id. Tr. at 8: 1-6; 44: 16-17; 45: 7-9.)

1

Officer McGowan left the manager's officer, walked toward the entrance of the Edison Village housing complex, and saw no one outside.  (<u>Id.</u> Tr. at 8: 3-23.)  Officer McGowan then walked around Edison Village's premises and toward its snow-covered parking lot.  (<u>Id.</u> Tr. at 9: 11-20.)

Officer McGowan observed an individual, later identified as a Mr. Hawthorne, walking through the parking lot.  (<u>Id.</u> Tr. at 10: 6-9; 16: 5-10.)  Hawthorne was walking from the direction of a parked, dark-colored Volvo sedan toward a black pickup truck.  (<u>Id.</u> Tr. at 10: 6-9, 11: 2-10; 57: 2-14; 72: 12-14.)  The driver of the black pickup truck had the engine running as she waited for Hawthorne.  (<u>Id.</u> Tr. at 12: 9-13; 15: 8-11.)  Hawthorne entered the passenger side of the truck, and the vehicle started to pull out of the parking lot.  (<u>Id.</u> Tr. at 12: 9-13, 20-25; 13: 1-15.)  Officer McGowan yelled at the truck to stop.  (<u>Id.</u>)  The driver stopped the truck, and Officer McGowan questioned Hawthorne.  (<u>Id.</u> Tr. at 13: 16, 19-25.)   Hawthorne appeared nervous, avoided eye-contact, and initially claimed to be helping a "girl" move furniture – pointing toward the empty parking lot.  (<u>Id.</u> Tr. at 14: 1-22; 15: 5, 15-17; 51: 16.)

Around this time, Defendant Michael Ridgeway exited the driver's side of the dark-colored Volvo sedan in the parking lot and walked toward the entrance of the housing complex.  (<u>Id.</u> Tr. at 15: 18-25; 16: 1-2, 11-13; 17: 6-8.)  It was at this point, when Defendant stepped out of the dark-colored sedan, that Officer McGowan suspected criminal activity.  (<u>Id.</u> Tr. at 52: 24-25; 53: 1-19.)  Officer McGowan continued to question Hawthorne and ordered Defendant Ridgeway to "stand still and not to move" so that Defendant Ridgeway could be identified and questioned.  (<u>Id.</u> Tr. at 17: 5-11; 19: 1; 54: 7-20; 56: 5-7.)  At first, Defendant Ridgeway complied and stood still.  (<u>Id.</u> Tr. at 55 at 5-7.)  Officer McGowan then turned his attention back to Hawthorne and asked Hawthorne for identification.  (<u>Id.</u> Tr. at 19: 7-14; 54: 21-22.)  However, just as Officer McGowan placed Hawthorn's identification under his handcuff key, Defendant

Ridgeway sprinted toward South 18th Street.  (Id. Tr. at 19: 25; 20: 1-6.)  Officer McGowan

turned away from Hawthorne, chased after Defendant, quickly losing sight of him, and radioed

for assistance.  (Id. Tr. at 20: 8-10, 20-25.)

Once Officer Ishman arrived with his K-9 partner Beau, the two officers brought Beau to

the last location where Officer McGowan saw Defendant.  (Id. Tr. at 22: 1-6.)  Beau directed the

officers to fresh footprints in the snow and, eventually, into the backyard of a residence.  (Id. Tr.

at 22: 25; 23: 1-20.)  Defendant was located when the officers observed his raised hands from

behind a barbecue grill.  (Id. Tr. at 23: 17-20.)  No drugs or money on or around Defendant's

person were observed.  (Id. Tr. at 59: 23-25.)  Defendant was arrested without incident and

charged with loitering and prowling in the backyard of a residence.   (Id. Tr. at 24: 10-21; 59: 18-

22; 61: 9-18.)

Officer McGowan conducted a search incident to Defendant's arrest.  (Id. Tr. at 24: 20-

22; 25: 17-20.)  The search recovered identification, $1,040 in cash, and a cellphone.  (Id. Tr. at

25: 2-20.)  Officer McGowan and another officer then discovered seven individually wrapped

packets of suspected heroin, a baggie containing a green leafy substance, and another cellphone

in the surrounding area.  (Id. Tr. at 26: 5-15, 22-25; 27: 12-19.)  Defendant Ridgeway was

subsequently transported to Dauphin County Booking Center.[1]  (Id. Tr. at 28: 11-15; 30: 21-22;

31: 5-6.)

---

[1] Around this time, K-9 partner Beau conducted a "plain smell" around the exterior of the
Volvo sedan and indicated to Officer Ishman that narcotics were inside the vehicle.  (Id. Tr. 33:
5-14.)  Dauphin County Dispatch confirmed that Defendant Ridgeway was the registered owner
of the Volvo sedan, and the officers towed "the vehicle to base to apply for a search warrant."
(Id. Defendant's Exhibit 1 at 4.)  The officers later obtained a search warrant and searched the
Volvo sedan at police headquarters.  The search recovered a firearm from the sedan's glove box,
plastic baggies containing suspected heroin, one knotted plastic baggie inclosing suspected crack
cocaine, one plastic baggie containing a green leafy substance, and numerous tablets inside a
Motrin PM bottle.  (Id. Tr. 34: 3-25; 35: 1-25; 36: 1-21.)

At the Dauphin County Booking Center, during the course of a strip search, Defendant Ridgeway purportedly uttered "Damn, I knew I should have threw that crack." (Id. Tr. at 31: 25; 32: 1-3.)  The record is unclear what prompted or preceded Defendant's statement. (Id. Tr. at 31: 16-25; 32: 1-3; 58: 4-25; 59: 1-7.)  However, at that time, Officer McGowan had neither provided Defendant with a Miranda waiver form nor read him his Miranda rights. (Id. Tr. at 58 at 12-16; 59: 11-13.)  In fact, Officer McGowan could not testify that "anybody ever told him that he had the right to remain silent or that anything he said could be used against him." (Id. Tr. at 59: 14-17.)

Around 4:30 p.m. on June 30, 2015, months after Defendant's February 2015 arrest, Sergeant Kyle Gautsch of the Harrisburg Police Department was arranging a controlled buy of two bundles of heroin from a target, Defendant Ridgeway. (Id. Tr. 79: 8-13; 80: 6-7; 82: 19-22.) Defendant had outstanding capias warrants for his arrest at the time. (Id. Tr. 79: 17-18.)  An undercover officer informed Sergeant Gautsch that the controlled buy had occurred (id. Tr. at 84: 1-8), and the officers arrested Defendant, who matched the description given by the undercover officer, shortly thereafter (id. Tr. at 83: 12-13, 17-21; 85: 6-9).  Once in custody, the officers recovered a handgun from Defendant's waistband, Sergeant Gautsch read Defendant his Miranda rights, and Sergeant Gautsch then conducted a search incident to arrest. (Id. Tr. at 85: 16-24.) The search exposed suspected heroin, rice, a single pill, and a large quantity of money from Defendant's person. (Id. Tr. at 87: 23-25; 88: 1-3.)  Defendant stated that he understood his Miranda rights and twice requested to speak with attorney Brian Perry. (Id. Tr. at 97: 7-13; 98: 10-16.)  At some point after making this request, Sergeant Gautsch told Defendant "that the gun could be a problem," responded to Defendant's repeated inquiries into the basis for the arrest, and insisted that Defendant remain silent. (Id. Tr. at 86: 21-22; 87: 4-13, 98: 10-16; Defendant's

Exhibit 5 at 2.)  During this time, Defendant Ridgeway continued to talk to Sergeant Gautsch,

requested the gun for his protection, and replied that "you put that [gun] on me."  (Id.

Defendant's Exhibit 5 at 2.)

At that point, Sergeant Gautsch turned his attention from Defendant Ridgeway to a blue

Chrysler 300 across the street.  (Id. Tr. at 89: 16-17.)  The confidential informant had identified a

blue Chrysler 300 as the vehicle Defendant Ridgeway routinely drove when selling drugs.  (Id.

Tr. at 89: 8-13.)  The Chrysler 300 was unlocked and running, the keys were in the ignition, and

the tags were registered to a Cadillac under Defendant Ridgeway's name.  (Id. Tr. at 90: 2-6, 14-

16.)  After contacting Dauphin County Dispatch about the vehicle's tags, Sergeant Gautsch

questioned Defendant about the Chrysler 300.   (Id. Tr. at 99: 1-4; Defendant's Exhibit 5 at 3.)

Defendant responded, "No, someone must have stolen my tag and put it on there."  (Id. at Tr. at

92: 4-7; Defendant's Exhibit 5 at 3.)  Sergeant Gautsch then entered the car and removed the key

out of the ignition.  He smelled the odor of marijuana and observed a suspected marijuana blunt

in the center console.  (Id. Tr. at 92: 22-24; 93: 2-9.)  Police then searched the Chrysler 300.  (Id.

Tr. at 94: 22-24.)  The search recovered bundles of suspected heroin and a receipt with

Defendant's date of birth and phone number.  (Id. Tr. at 94: 2-11.)

**B.    Procedural Background**

On October 14, 2015, Defendant Michael Ridgeway was charged by Grand Jury

indictment with (1) two counts of possession with intent to distribute "a mixture and substance

containing a detectable amount of heroin," crack cocaine, Oxycodone, and marijuana, in

violation of 21 U.S.C. § 841(a)(1); (2) one count of possession with intent to distribute "a

mixture and substance containing a detectable amount of heroin," crack cocaine, and marijuana,

in violation of 21 U.S.C. § 841(a)(1); and (3) two counts of possession of a firearm during and in

relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c).  (Doc. No. 1.)  The five counts resulted, <u>inter alia</u>, from Defendant's arrests on February 22, 2015 and June 30, 2015 in Harrisburg, Pennsylvania.  Defendant entered into a plea of not guilty on October 27, 2015. (Doc. Nos. 10, 13.)

On January 12, 2016, Defendant Ridgeway filed a motion to suppress all evidence resulting from the arrest of Defendant Ridgeway on February 22, 2015 and subsequent search of his car.[2]  (<u>See</u> Doc. Nos. 25 ¶¶ 4, 6; 26 at 4; 42 at 4, 7-9; 54 at 8-9.)  Defendant also filed a supplemental motion to suppress statements made on February 22, 2015 under <u>Miranda v. Arizona</u> and statements made on June 30, 2015, which were obtained in violation of Defendant's Fifth and Sixth Amendments rights.  (Doc. No. 30.)  On February 3, 2016, the Court conducted a suppression hearing (Doc. No. 33), and permitted the parties to file supplemental briefs (Doc. No. 37).  Defendant filed a supplemental brief in support of the two motions to suppress on February 22, 2016 (Doc. No. 42), the Government responded with a brief in opposition on April 7, 2016 (Doc. No. 49), and Defendant replied to the Government's brief on April 29, 2016 (Doc. No. 54).  Defendant's motions to suppress are now ripe for disposition.  The Court will address Defendant's motions to suppress in turn.

## II.      LEGAL STANDARD

### A.      Fourth Amendment

The Fourth Amendment to the United States Constitution protects the public against "unreasonable searches and seizures."  U.S. Const. amend. IV.  "Generally, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on

---

[2] More specifically, Defendant's briefs urge the Court to "suppress all evidence obtained as a result of this unconstitutional suspicionless seizure of Michael Ridgeway" in the Edison Village parking lot.  (Doc. No. 24 at 4-5, 6-9; <u>see</u> Doc. Nos. 26 at 4; 54 at 8-9.)

probable cause." United States v. Robertson, 305 F.3d 164, 167 (3d Cir. 2002) (citing Katz v.

United States, 389 U.S. 347, 356-57 (1967)).  "Under the exception to the warrant requirement

established in Terry, however, an officer may, consistent with the Fourth Amendment, conduct a

brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal

activity is afoot."  United States v. Torres, 534 F.3d 207, 210 (3d Cir. 2008) (internal quotations

omitted).  "Any evidence obtained pursuant to an investigatory stop (also known as a 'Terry

stop' or a 'stop and frisk') that does not meet this exception must be suppressed as 'fruit of the

poisonous tree.'"  Id. (quoting United States v. Brown, 448 F.3d 239, 244 (3d Cir. 2006)).

### B.      Miranda v. Arizona

The Fifth Amendment to the United States Constitution contains an individual privilege

against self-incrimination, and Miranda v. Arizona, 384 U.S. 436 (1966), provided a mechanism

to safeguard that privilege.  384 U.S. at 467.  Before interrogation, the accused "must be warned

that he has a right to remain silent, that any statement he does make may be used as evidence

against him, and that he has a right to the presence of an attorney, either retained or appointed."

Id. at 444.  "A statement made in response to custodial police interrogation must be suppressed

unless the suspect first waived his Miranda rights voluntarily, knowingly and intelligently."

United States v. Ray, 803 F.3d 244, 265-66 (6th Cir. 2015) (quoting Miranda v. Arizona, 384

U.S. 436, 478 (1966)).

## III.    DISCUSSION

### A.      Fourth Amendment – February 22, 2015

Defendant moves the Court to suppress all of the evidenced gathered on February 22,

2015, including Defendant's "statements and items found in his car," under the fruit of the

poisonous tree doctrine.  (Doc. No. 42 at 4, 9, 12.)  Defendant Ridgeway argues that he was

unreasonably seized within the meaning of the Fourth Amendment when he initially complied with Officer McGowan's command to "stand still and not to move" in the Edison Village parking lot.  (Id; see Doc. No. 26 at 4.)

In assessing Defendant's claimed constitutional violation, the Court must determine as a threshold matter "whether a seizure has taken place and, if so, when the seizure occurred." Brown, 765 F.3d at 288.  Defendant argues that Officer McGowan's command to "stand still and not to move" constituted a seizure within the meaning of the Fourth Amendment because Defendant submitted to Officer McGowan's show of authority by initially complying with Officer McGowan's command to not move.  (Doc. No. 42 at 8-9.)  The Government contends that there was no seizure because Defendant "ignored" Officer McGowan's command "and fled the scene."  (Doc. No. 49 at 10, 12.)

The Fourth Amendment's protection against unreasonable searches and seizures is not implicated unless a search or seizure occurs.  United States v. Brown, 448 F.3d 239, 245 (3d Cir. 2006).  A seizure occurs "when there is either (a) a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful, or (b) submission to a show of authority."  United States v. Lowe, 791 F.3d 424, 430 (3d Cir. 2015) (internal citations omitted).  As to the latter category – submission to a show of authority – "an implicit or explicit command that the person stop" qualifies as a "show of authority."  Id. at 433 (internal citation omitted).  Whether a defendant actually submitted to a "show of authority" merits separate discussion.

When "a policeman yell[s] 'Stop, in the name of the law!' at a fleeing form that continues to flee[,]" no seizure has occurred because the defendant did not yield to the officer's "show of authority."  See California v. Hodari D., 499 U.S. 621, 624 (1991).  However, where a defendant

"initially yield[s]" to an officer's authority but "fle[es] soon thereafter," United States v. Coggins, 986 F.2d 651, 654 (3d Cir. 1993), the Third Circuit has indicated that submission generally "require[s] something more than a momentary pause or mere inaction." United States v. Waterman, 569 F.3d 144, 146 (3d Cir. 2009); see United States v. Smith, 575 F.3d 308, 315-16 (3d Cir. 2009) (collecting cases).

For example, in United States v. Smith, the Third Circuit "consider[ed] what constitutes submission to a police officer's authority." 575 F.3d 308, 310 (3d Cir. 2009). In that case, two police officers, in full uniform and in marked cars, saw the defendant walk down the street. Id. at 311. An officer leaned out the window and asked the defendant, "Can I talk to you for a second?" Id. The defendant stopped walking, turned toward the car, and "seemingly agreed to speak with the officers." Id. After questioning the defendant, the officer asked the defendant "to place his hands on the hood of the patrol vehicle so the officers could 'speak with him further.'" Id. The defendant "took two steps toward the vehicle, at which point one or both of the officers began to open their car doors. At the sound of the car door opening, [the defendant] turned and ran." Id. The defendant was taken into custody quickly thereafter. Id.

The Third Circuit concluded that, even "[a]ssuming the officer's instruction" to place his hands on the car "was a show of authority," the "[t]wo steps towards the hood of a car does not manifest submission to the police officers' show of authority." Id. at 314, 316. In reaching its conclusion, the Third Circuit distinguished between a defendant who "only paus[es] momentarily before attempting to flee," and a defendant who is "ordered to remain and complie[s] by sitting back down … [e]ven though he fle[es] soon after." Id. at 315-16 (citing United States v. Brown, 448 F.3d 239, 246 (3d Cir. 2006)). The Third Circuit reasoned that the defendant in Smith

manifested mere "momentary compliance" by taking two steps toward the hood of the police vehicle. Id. at 316.

Here, the Court finds there was a show of authority when Officer McGowan commanded Defendant Ridgeway to "stand still and not to move." An "implicit or explicit command that the person stop" constitutes a "show of authority." Lowe, 791 F.3d at 433 (citing Hodari D., 499 U.S. at 626). However, the Court does not find that Defendant Ridgeway submitted to the officer's show of authority when Defendant initially complied with Officer McGowan's command. See Valentine, 232 F.3d at 359; (see Doc. No. 54 at 3) ("Michael Ridgeway stood still for an instant and then ran."). The Court is guided by the Third Circuit's conclusion that "submission … would seem to require something more than a momentary pause or mere inaction." United States v. Waterman, 569 F.3d 144, 146 (3d Cir. 2009). Defendant Ridgeway paused only for the amount of time it took for Officer McGowan to ask Hawthorne for identification and place Hawthorne's identification in his handcuff key. Defendant Ridgeway also initially complied through inaction, as opposed to taking two steps toward a police vehicle.

Therefore, in light of the Third Circuit's United States v. Smith decision, the Court finds that Defendant Ridgeway did not submit – for purposes of the Fourth Amendment – to Officer McGowan's show of authority. In other words, Defendant Ridgeway was not seized when Defendant initially complied with Officer McGowan's command in the Edison Village parking lot. Because Defendant Ridgeway was not seized within the meaning of the Fourth Amendment, the Fourth Amendment was not implicated when Defendant initially complied with Officer McGowan's command. Accordingly, Defendant's motion to suppress the evidence gathered February 22, 2015 will be denied. The Court rejects Defendant's argument that Officer McGowan's command to "stand still and not to move" violated the Fourth Amendment's

prohibition against unreasonable seizures as unsupported by the facts.[3] The Court turns instead to Defendant's supplemental motion to suppress statements.

### B. Fifth Amendment – February 22, 2015

Defendant also moves the Court to suppress statements Defendant made about controlled substances on February 22, 2015, alleging that these statements were obtained in violation of his Fifth Amendment rights. (Doc. Nos. 31 at 3-4; 42 at 5-6.) Specifically, Defendant seeks to suppress the February 22, 2015 statement, "Damn, I knew I should have threw that crack." (Doc. No. 42 at 5.) The Government responds that Defendant was not "subject to custodial interrogation or its functional equivalent" and that the statement was "spontaneous." (Doc. No. 49 at 10-12.)

The Fifth Amendment "requires law enforcement officers to advise of certain rights, including the right to have counsel present, before interrogating an individual who has been 'taken into custody or otherwise deprived of his freedom.'" United States v. Ray, 803 F.3d 244, 265-66 (6th Cir. 2015) (quoting Miranda v. Arizona, 384 U.S. 436, 478 (1966)). The Fifth Amendment rights under Miranda v. Arizona attach when a defendant is (1) in custody and (2) subject to police interrogation. Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980). An individual is in "custody" when there "is a formal arrest or restraint on freedom of movement of

---

[3] In the motion to suppress, Defendant contended that the officers lacked probable cause to arrest Defendant Ridgeway without a warrant in the residence's backyard. (See Doc. Nos. 25 ¶ 6; 26 at 3.) The Court briefly addresses this argument as Defendant did not raise the contention in his supplemental briefs. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). "Probable cause need only exist as to [one of the] offense[s] that could be charged under the circumstances." Reedy v. Evanson, 615 F.3d 197, 211 (3d Cir. 2010) (brackets in original). Here, at the time Defendant was observed behind a backyard barbecue grill, a reasonable officer would have believed– considering the facts and circumstances within the arresting officer's knowledge–that Defendant had committed an offense.

the degree associated with a formal arrest." United States v. Leese, 176 F.3d 740, 743 (3d Cir. 1999) (interior quotations omitted). The "term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police … that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id. at 301. However, "Miranda does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers." United States v. Crisolis-Gonzalez, 742 F.3d 830, 837 (8th Cir. 2014).

Here, Defendant was in custody when he stated, "Damn, I knew I should have threw that crack," and had not been provided with either a Miranda waiver form or been read his Miranda rights. As to whether Defendant was subject to police interrogation, the Court cannot determine with certainty what statements or questions were directed at Defendant Ridgeway prior to the statement, "Damn, I knew I should have threw that crack." During cross-examination, Defendant's counsel elicited the following testimony from Officer McGowan:

> Q. What exactly did you say to Mr. Ridgeway while you were in the booking area doing the strip-search?
>
> A. I don't remember much of a conversation. I just remember something that he told me.
>
> Q. Did you say anything to him at all?
>
> A. I'm sure we were talking, I remember him talking to me, but it wasn't in an interrogation or questioning type format. It just -- it just was not.
>
> Q. Do you remember any of the things that you guys talked about?
>
> A. Yeah, I want to say at one point he was talking with one of the members from the booking center staff. I think he was being less than cooperative, and he tried to say how, you know, it wasn't personal, he was just trying to cooperate, this and that, I mean, but it wasn't related to anything of substance regarding the investigation that was underway.

(Doc. No. 39, Tr. at 58: 17-25; 59: 1-7.) Accordingly, the Court finds that the Government has not "met its burden to prove by a preponderance of the evidence that defendant's post-arrest

statements were both spontaneous and voluntary, and were not the product of 'interrogation' as defined" in <u>Miranda v. Arizona</u>.  <u>See</u> <u>United States v. Fautz</u>, 812 F. Supp. 2d 570, 644 (D.N.J. 2011); <u>see also</u> <u>United States v. Annucci</u>, No. 06-982, 2007 WL 1310156, at *4 (S.D.N.Y. May 3, 2007).  Defendant's motion to suppress the statement, "Damn, I knew I should have threw that crack," will be granted.  (Doc. No. 42 at 5.)

### C.    Fifth Amendment – June 30, 2015

Defendant also requests that the Court suppress all statements on June 30, 2015 that followed Defendant's request to call an attorney.[4]  (Doc. No. 42 at 9.)  Defendant specifically urges the Court to suppress "any and all statements regarding the reason for arrest, the automobile, and any other statements."  (<u>Id.</u> at 10.)   The Government responds that the "answers given, both responsive and unresponsive, should be admissible since they were asked in order to avert a perceived public safety issue" concerning an idling vehicle.  (Doc. No. 49 at 15, 17.)

Under the Fifth Amendment right to counsel, once an accused has "expressed his desire to deal with the police only through counsel," he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police."  <u>Edwards v. Arizona</u>, 451 U.S. 477, 484-85 (1981); <u>see</u> <u>Davis v. United States</u>, 512 U.S. 452, 459 (1994).  Officers must "cease questioning if a suspect's request for an attorney is clear and unambiguous."  <u>United States v. Mohr</u>, 772 F.3d 1143, 1145-46 (8th Cir. 2014).  However, an "accused can waive his

---

[4] Defendant's supplemental motion to suppress statements made on June 30, 2015 relies on both the Fifth and Sixth Amendment right to counsel.  (Doc. No. 30; <u>see</u> Doc. No. 42.)  The Sixth Amendment right to counsel is "offense specific."  <u>McNeil v. Wisconsin</u>, 501 U.S. 171, 175 (1991), and "does not attach until a prosecution is commenced."  <u>Rothgery v. Gillespie Cty., Tex.</u>, 554 U.S. 191, 198 (2008) (quoting <u>McNeil</u>, 501 U.S. at 175).  Here, as to the June 30, 2015 statements and corresponding offenses, prosecution had not commenced within the meaning of the Sixth Amendment.  Accordingly, the Court decides the motion to suppress his June 30, 2015 statements solely under the Fifth Amendment.

previously invoked right to counsel if he initiates further communications with the law

enforcement officials." United States v. Johnson, 42 F.3d 1312, 1318 (10th Cir. 1994).[5]

Here, Sergeant Gautsch read Defendant his Miranda rights after arresting Defendant on

June 30, 2015.  Defendant Ridgeway twice requested to speak with a specific attorney, Brian

Perry.  Defendant's request for an attorney was clear and unambiguous.  Davis, 512 U.S. at 459.

In fact, Sergeant Gautsch testified that, "When [Defendant] asked for a specific attorney, I

acknowledged that as a sign of he does not want to answer any questions or he obviously wants

an attorney to represent him."  (Doc. No. 39, Tr. at 87: 1-9.)

However, instead of ceasing to speak with Defendant Ridgeway, Sergeant Gautsch

responded to Defendant's repeated inquiries about the basis for his arrest, informed Defendant

that "that the gun could be a problem," and advised Defendant to remain silent.  (Id. Tr. at 86:

21-22; 87: 4-13, 98: 10-16; Defendant's Exhibit 5 at 2.)  During this time, Defendant Ridgeway

continued to talk, requested the gun for his protection, and replied that "you put that [gun] on

me."  (Id. Defendant's Exhibit 5 at 2.)  Upon review of the record, the Court finds that the

statement by Sergeant Gautsch, "that the gun could be a problem," was "reasonably likely to

elicit an incriminating response from the suspect" and, thereby, qualifies as interrogation under

Miranda v. Arizona.  Innis, 446 U.S. at 301.  Accordingly, the Court will suppress Defendant

Ridgeway's statements made in response to Sergeant Gautsch's statement, "that the gun could be

a problem."

Thereafter, Sergeant Gautsch walked away from Defendant to examine the idling

Chrysler 300.  Upon return, Sergeant Gautsch not only knew that the confidential informant had

---

[5] Although the Government's brief does provide that Defendant "engag[ed] the officers in conversation" after asking for a specific attorney, the Government does not contend that Defendant Ridgeway waived his previously invoked Fifth Amendment right to counsel by continuing to speak.  (Doc. No. 49 at 17.)  The Court declines to address the issue sua sponte.

identified a blue Chrysler 300 as a vehicle Defendant Ridgeway routinely drove, (Doc. No. 39,

Tr. at 89: 8-13), but also determined that the tags were registered to a Cadillac under Defendant

Ridgeway's name (id. Tr. at 90: 2-6, 14-16).  However, Sergeant Gautsch questioned Defendant

about the Chrysler 300 and asked whether Defendant owned the vehicle.   (Id. Tr. at 99: 1-4;

Defendant's Exhibit 5 at 3.)  Defendant responded, "No, someone must have stolen my tag and

put it on there."  (Id. at Tr. at 92: 4-7; Defendant's Exhibit 5 at 3.)

The Government argues that Sergeant Gautsch's questions about the vehicle were

intended to "avert a perceived public safety issue" and that Defendant's responses should be

admissible.  (Doc. No. 49 at 15, 17.)  The Court is not persuaded that the narrow, public safety

exception to the Miranda doctrine applies.  (Id.) (citing New York v. Quarles, 467 U.S. 646

(1984)).  Questioning Defendant Ridgeway about the ownership of a stationary vehicle, after

Defendant had twice invoked his Fifth Amendment right to counsel and after Sergeant Gautsch

had already determined that the tags were registered to a Cadillac under Defendant Ridgeway's

name, was not "necessary to protect the public or the police from immediate danger."  United

States v. Duncan, 308 F. App'x 601, 605 (3d Cir. 2009) (citing Quarles, 467 U.S. at 656-59 &

n.8).  Accordingly, the Court will also suppress Defendant's statements made in response to

Sergeant Gautsch's questions about the Chrysler 300, including "No, someone must have stolen

my tag and put it on there."

**IV.   CONCLUSION**

For the reasons stated above, the Court will deny Defendant's motion to suppress

evidence under the Fourth Amendment (Doc. No. 25), and grant Defendant's supplemental

motion to suppress statements pursuant to Fifth and Sixth Amendments (Doc. No. 30).  An order

consistent with this memorandum follows.